UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SEAN CHRISTOPHER WALKER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO.: 1:16-CV-396-TLS ) |
| Acting Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Sean Walker seeks judicial review of Defendant Acting Commissioner of Social Security Administration's decision to deny his Disability Insurance and Social Security Income benefits for the period between January 15, 2008, through December 5, 2014. He asks this Court to reverse the agency's decision or, alternatively, remand the case for reconsideration.

**BACKGROUND**

The Plaintiff claims he became disabled on January 15, 2008, at the age of 42, because of a stroke. His diagnoses included an acute cerebral hemorrhage, hypertension, and lower back pain. On April 29, 2013, an Administrative Law Judge (ALJ) denied the Plaintiff's application for benefits. While the ALJ agreed that Plaintiff's residuals from a stroke, such as fatigue, dizziness, memory and cognitive issues, and his degenerative disc disease at L4-5 were severe impairments, she found that they did not meet or equal any listing found in the federal regulations. Moreover, the ALJ found that Plaintiff was able to perform a significant number of jobs that exist in the national economy. The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied the Plaintiff's request to review

it. The Plaintiff appealed to the United States District Court for the Northern District of Indiana. On February 16, 2016, the Honorable Joseph S. Van Bokkelen remanded the matter for further proceedings, and the case was sent back to an ALJ for a new hearing and decision.

On July 12, 2016, a new administrative hearing before a different ALJ was held, and on July 22, 2016, the ALJ issued a written decision, in which she concluded that Plaintiff was not disabled. In rendering this decision, the ALJ noted that the Plaintiff had already received a favorable ruling as of December 5, 2014, and confined her decision to addressing the period from January 15, 2008, through December 4, 2012. That decision became the final decision of the Commissioner and has been appealed to this Court for judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## ALJ DECISION (FIVE-STEP EVALUATION)

The Social Security regulations set forth a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. *See* 20 C.F.R. § 404.1520(a)(4)(i)–(v). A disability under the Social Security Act is defined as being unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An applicant must show that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The first step is to determine whether the claimant is presently engaged in substantial gainful activity (SGA). Here, the ALJ found that the Plaintiff was not engaged in SGA, so she moved on to the second step, which is to determine whether the claimant had a "severe" impairment or combination of impairments. An impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The ALJ determined that the Plaintiff's severe impairments are status post cerebral hemmorage, degenerative disc disease of the lumbar spine, and cognitive disorder NOS. The ALJ found that the Plaintiff's hypertension and hyperlipidemia did not impose more than minimal limitations on work-related activities. The ALJ noted that a March 2015 psychological consultative examination diagnosed an unspecified depressive disorder and unspecified anxiety disorder. These conditions were not identified until after the Plaintiff was found to be disabled in December 2014, and prior to this, the Plaintiff had no mental health treatment, was not taking psychotropic medications, and treatment records did not reflect problems with mood, anxiety, or other psychological symptoms.

At step three, the ALJ considered impairment listings to determine whether the Plaintiff had an impairment, or combination of impairments, that meets or medically equals the severity of one of the impairments listed by the Administration as being so severe that it presumptively precludes SGA. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ concluded that the Plaintiff's impairments did not meet or equal a listed impairment.

Next, the ALJ was required, at step four, to determine the Plaintiff's residual functional capacity (RFC), which is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. In arriving at

the RFC, the ALJ incorporated the discussion of evidence from the April 29, 2013, decision, as well as the testimony from the July 2016 hearing, function reports, and the medical records and opinions. The ALJ concluded that the evidence did not support the severity of the Plaintiff's alleged mental or physical impairments during the relevant period. The ALJ acknowledged that the Plaintiff had some residual effects from the 2008 stroke, including fatigue, dizzy spells, and memory problems, and also had a record of some reported back pain. To reflect this, the ALJ limited the Plaintiff to sedentary, unskilled work. The ALJ added to this postural and environmental restrictions, and limited the Plaintiff to simple instructions and tasks and a work environment free from fast paced productions requirements or pace.

Once the RFC is established, the ALJ uses it to determine whether the claimant can perform his past work and, if necessary, whether the claimant can perform other work in the economy. 20 C.F.R. § 416.920. At this final step of the evaluation, the ALJ determined that the Plaintiff could not perform his past work, but in light of his age, education, work experience, and RFC, could perform other jobs that existed in significant numbers in the national economy.

**STANDARD OF REVIEW**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla

but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997); *see also Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## ANALYSIS

A.  **Opinion Evidence and RFC**

The Plaintiff argues that the ALJ did not properly evaluate the opinion of his family practitioner, Dr.William Goudy, who had treated the Plaintiff since January 31, 2008. On August 16, 2012, Dr. Goudy provided a letter wherein he concluded that Plaintiff could not work for several reasons. (R. 329.) Dr. Goudy cited the Plaintiff's "intermittent, unpredictable episodes of dizziness and near fainting since" his stroke. (*Id.*) Dr. Goudy stated that the Plaintiff had more difficulty concentrating and focusing on tasks, and could only work for about fifteen to thirty minutes on one task before he lost focus and had to rest. His short term memory, as well as his physical stamina had worsened since the stroke. Dr. Goudy noted that the Plaintiff advised that he could only walk about one city block before having to sit and rest, and had to take midday naps. Additionally, he could only stand for a few minutes because of leg weakness and poor balance. The Plaintiff reported that he could drive for short distances of about ten miles, but was afraid to drive further distances because of dizzy spells. During his visit with Dr. Goudy, the Plaintiff was unable to walk heel-to-toe for more than three steps without losing balance, and was unable to stand alone on either leg for more than three seconds. Dr. Goudy ended the letter with his assessment that the Plaintiff's status was stable, his symptoms had been stable for about two years, and his prognosis was guarded. He wrote, "In my opinion Sean will never be the same as he was before his stroke. I suspect that [h]is cognitive skills, his physical strength, and his ability to concentrate on tasks will all slowly worsen over the next few years." (*Id.*)

Generally, controlling weight is given to the treating physician's opinion only if it is well-supported by medically acceptable objective evidence and consistent with the other

substantial evidence of record. 20 C.F.R. § 404.1527(d)(2). When the treating physician's opinion is not entitled to controlling weight—such as where it is not supported by the objective medical evidence, is inconsistent with other substantial evidence in the record, or is internally inconsistent, *see Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995))—then the ALJ should move on to assessing the value of the opinion in the same way she would any other medical evidence. *See id.* Assessing the weight to afford the opinion depends on a number of factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, 20 C.F.R. § 404.1527(c)(2)(i)–(ii), whether the physician supported his or her opinions with sufficient explanations, *id.* § 404.1527(c)(3), and whether the physician specializes in the medical conditions at issue, *id.* § 404.1527(c)(5). If the ALJ discounts the physician's opinion after considering these factors, that decision stands so long as the ALJ "'minimally articulate[d]'" her reasons. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 372 (7th Cir. 2004)). It is not the reviewing Court's job to determine whether the treating physician's opinion should have been given controlling weight. *See Clifford*, 227 F.3d at 869 ("[W]e review the entire record, but do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner."). However, an ALJ must give "good reasons" for the weight afforded to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2).

In the previous decision denying benefits, the ALJ detailed Dr. Goudy's findings, but gave Dr. Goudy's opinion "less weight" because the "physical limitations were not supported by his own treatment notes." (R. 39.) As this was the extent of the analysis, and there was no explanation about what was inconsistent nor any discussion of the factors in 20 C.F.R.

7

§ 404.1527(c), the district court remanded. The Defendant argues that the ALJ has rectified the errors of the previous decision, clearly assigning partial weight to Dr. Goudy's opinion and providing good reasons for doing so as required under 20 C.F.R. §§ 404.1527, 416.927. The Plaintiff complains that the ALJ's assessment is too vague to allow for meaningful review, and that Dr. Goudy's opinion should have been given controlling weight. In a related argument, the Plaintiff claims that the ALJ's RFC did not incorporate all the limiting effects of the Plaintiff's impairments, such as those Dr. Goudy identified in his August 2012 opinion letter.

The Court finds that the ALJ provided an adequate explanation for assigning partial weight to Dr. Goudy's opinion, and concluding that, prior to December 2014, the Plaintiff could perform unskilled sedentary work with additional postural, environmental, and work pace limitations. Regarding Dr. Goudy's statement that the Plaintiff could not work, the ALJ properly noted that the statement was a conclusion that was not limited to the medical evidence alone but, rather, involved vocational considerations. The Social Security regulations recognize that some issues that a treating source might comment on are not medical issues regarding the nature and severity of an impairment, but are instead administrative findings reserved for the Commissioner. Examples of these issues include whether an individual's impairment meets or is equivalent in severity to the requirements of any impairment in the listings, what an individual's RFC is, whether an individual's RFC prevents him from doing past relevant work, how the vocational factors of age, education, and work experience apply, and whether an individual is "disabled" under the Act. 20 C.F.R. § 404.1527(e); *see also* SSR 96-5p.

With respect to Dr. Goudy's statement that the Plaintiff suffered intermittent, unpredictable episodes of dizziness and near fainting since his stroke, the ALJ explained that Dr.

Goudy's treatment records did not consistently document this. Instead, his records showed that these issues arose nearer to 2013 and 2014 without any articulation of the frequency or the severity. "In fact, no neurological deficits, cognitive issues, or speech problems [were] noted in Dr. Goudy's treatment notes." (R. 346–47.) Neither were any issues related to leg weakness, poor balance, driving short distances, walking one block, or taking naps. This is an adequate explanation of why the opinion was not entitled to controlling weight. Additionally, the ALJ properly noted which restrictions that were cited in the letter, in addition to not appearing in Dr. Goudy's treatment notes, appeared to be based on the Plaintiff's subjective complaints to Dr. Goudy, such as the need to nap and the ability to walk one block. *See Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (noting that "medical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints"); *see also White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005). Because the ALJ pointed to the lack of objective medical evidence, and the subjective nature of the complaints, the ALJ provided the "good reasons" required for not assigning controlling weight to Dr. Goudy's opinion. *See* 20 C.F.R. § 404.1527(d)(2).

In support of remand, the Plaintiff argues that the ALJ failed to apply the regulatory factors to decide how much weight to give Dr. Goudy's opinion. But that is precisely what the ALJ did. The ALJ generally covered the ground of § 404.1527(c)(2) and, in doing so, "sufficiently articulated her assessment of the evidence to assure the court that she considered the important evidence and to enable the court to trace the path of her reasoning." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 792 (E.D. Wis. Jan. 26, 2004) (citations omitted).

The ALJ noted that Dr. Goudy, who was a primary care physician, provided routine

follow-up care every three to six months after the Plaintiff suffered a stroke, but that he was not seen for any acute stroke-related problems. She acknowledged the length of the treating relationship and cited to specific examinations and treatment notes to determine if any issues were present longitudinally. The ALJ analyzed whether the opinion was supported by medical evidence, and whether it was consistent with the record as a whole. She noted that the Plaintiff saw a neurosurgeon, Dr. Isa Canavati, a month after his stroke, with instructions to be re-evaluated as needed. However, the Plaintiff did not return to see Dr. Canavati for further treatment and did not follow-up with any other neurology specialist. The ALJ also noted that the Plaintiff did not receive orthopedic treatment, physical therapy, or injections for his back pain. The ALJ compared Dr. Goudy's opinion to the consultative exams and to the Plaintiff's daily activities, including the fact that he lived independently for almost four years following his stroke. The ALJ specifically referenced Dr. Goudy's treatment when she discounted the findings of the State agency psychologists—Kari Kennedy, Psy.D. and Joelle J. Larsen, Ph.D.—both of whom reviewed the record and found that Plaintiff had no severe mental impairments and was capable of performing light work.

The ALJ believed that the medical evidence documented some loss of memory functioning and some residual balance issues since 2008, and took this into account in the RFC. She also took into account that the Plaintiff should avoid heavier lifting and carrying, as well as prolonged standing and walking, and more complex, fast paced, and detailed work activity. (R. 345.) However, the ALJ did not think the evidence demonstrated a complete inability to perform the equivalent of sedentary unskilled activity. Thus while the ALJ did not fully credit the more extreme restrictions contained in Dr. Goudy's opinion, the ALJ used Dr. Goudy's notes

and assessment to fully recognize the profundity of the Plaintiff's limitations. The Plaintiff does not like this outcome, but the Court may not reweigh the evidence and substitute its judgment for that of the ALJ. *See Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997).

B.    **Work History**

The Plaintiff complains that the ALJ did not give any weight to his significant work history. The Seventh Circuit has observed that a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (first quoting *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015); then quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). However, "work history is just one factor among many, and it is not dispositive." *Id.*; *see also Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) ("An ALJ is not required to consider a claimant's work history."). As long as substantial evidence supports the ALJ's credibility determination, silence on this factor will not negate that evidence. *Loveless*, 810 F.3d at 508.

Here, the ALJ noted that "the claimant's steady work history has been considered by the [ALJ] as one element in this case," but ultimately ruled that "the totality of the evidence outweighs that factor." (R. 341.) The ALJ considered the Plaintiff's daily activities, the objective tests and clinical findings, and the degree of treatment sought. Thus, as required, the ALJ considered the factor as one factor among many.

C.    **Step Five Determination**

At step five of the determination, the Commissioner is responsible for providing evidence

that other jobs that the Plaintiff can adjust to "exist in significant numbers in the national economy (either in the region where you live or in several regions in the country)." 20 C.F.R. § 404.1560(c). Here, the ALJ relied on the testimony of a vocational expert (VE) to determine that the Plaintiff could make adjustment to other work in light of his RFC and vocational factors. *Id.* §§ 404.1520(g) and 404.1560(c). The VE testified that the jobs of address clerk, document preparer, and table worker/spotter existed in significant numbers in the national economy, and that they were representative jobs that existed in multiple regions in the nation. The ALJ determined that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles (DOT). Therefore, a finding of not disabled was appropriate.

The Plaintiff advances three challenges to the ALJ's step five decision: 1) that the ALJ did not take into account the Plaintiff's inability to drive more than ten miles; 2) that the DOT is obsolete and reliance on the DOT requires remand; and 3) that the ALJ did not inquire as to the VE's methodology in arriving at the job numbers.

In support of his first challenge, the Plaintiff cites *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014). In that case, the Seventh Circuit recognized that, according to the regulations of the Social Security Administration, work exists in the national economy "when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether . . . work exists in the immediate area where you live." *Browning*, 766 F.3d at 708 (quoting 20 C.F.R. § 404.1566). The court thought that the *Browning* case was peculiar because the plaintiff was incapable, by reason of her mental and physical condition, of seeking work outside her immediate small town, which made "the number of jobs in the region or the nation irrelevant." *Id.* Because the Plaintiff's "immobility [was] a consequence of the

disability," it needed "to be factored into the analysis of job availability." *Id.*

The Plaintiff asserts that his circumstances mirror those that existed in *Browning* because his functional limitations impacted his mobility. Specifically, he could only drive ten miles due to concerns with dizziness, so the VE should have provided the number of jobs that were available in a ten-mile radius from his home. The Court is not persuaded. First, the ALJ did not find that the Plaintiff's impairments rendered him unable to relocate for employment. Second, the regulations clearly explain that "[it] does not matter whether—(1) work exists in the immediate area in which you live; (2) a specific job vacancy exists for you; or (3) you would be hired if you applied for work." 20 C.F.R. §§ 404.1566(a) & 416.966(a). They further provide that a claimant will not be disabled if he remains unemployed due to (1) an inability to get work, (2) a lack of work in his local area, (3) the hiring practices of employers, (4) technological changes in the industry, (5) cyclical economic conditions, (6) no job openings, (7) the claimant would not be hired to do the work, or (8) the claimant did not wish to do a particular type of work. *Id.* §§ 404.1566(c) & 416.966(c). As the Defendant argues, to accept the Plaintiff's argument "would mean that a claimant in a congested transit-rich area such as Chicago or New York would not be disabled due to the proximity of reliable public transportation, while a claimant in a rural and not well-serviced transit area would be found disabled." (Def.'s Resp. 13 (arguing that such an outcome would "fly clearly in the fact of the Commissioner's regulations").) While the *Browning* court offered criticism, it did not overrule well-established precedent. The VE's testimony, and the ALJ's reasonable reliance on it, are consistent with current Social Security regulations, and they do not constitute error requiring remand.

Additionally, the Plaintiff argues that the step five evidence was defective because the

Commissioner did not put forth sufficient evidence that the DOT jobs had not been drastically transformed due to technology. The Plaintiff asserts that the Social Security Administration is aware of the "obsolescence problem." (Pl.'s Br. 13, ECF No. 18 (citing *Dimmett v. Colvin*, 816 F.3d 486, 489 (7th Cir. 2016).) Indeed, the VE was aware of the issue and testified that the document preparer position was still performed today, although with some adjustment for copy machines and scanning equipment being favored over microfiche. (R. 423 (testifying that a document preparer "prepares documents such as brochures, pamphlets, catalogs for the purpose of microfilming, using paper cutters, photocopying machines, rubber stamps and other work devices").) The VE explained that the address clerk position was not limited to addressing by hand and had not become completely automated, and that those jobs still existed. (R. 427–28.) Accordingly, unlike in *Dimmett*, the ALJ here did not err by relying on "fatally weak [VE] testimony." 816 F.3d at 489. The real problem in *Dimmett* was that "the administrative law judge ignored key medical evidence and the vocational expert ignored the limitations that the administrative law judge placed on the type of job that the plaintiff is able to perform," *id.* at 490, and those these deficiencies and errors are not present here.

The final challenge the Plaintiff makes to the step five determination is that the ALJ did not inquire as to the methodology the VE used to allocate the job numbers from the broader Office of Economic Statistics categories to the narrower DOT job categories. The Plaintiff cites to *Alaura v. Colvin*, 797 F.3d 503, 507–08 (7th Cir. 2015), which expressed concern with the source and validity of statistics that VE's testify to at disability hearings. At the Plaintiff's hearing, the VE was only asked one question related to the calculation of the numbers of job that existed. The Plaintiff's counsel asked as of what date the national job number for address clerk,

14

50,000 jobs, had been calculated. (R. 428.) As this was not a question about the methodology the VE employed to arrive at the number, nor did it develop into a challenge to the foundation of the VE's opinion, it did not trigger the need for further inquiry by the ALJ on this point. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion. . . . If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry."); *see Willis v. Berryhill*, 3:16-CV-142-PPS-JEM, 2017 WL 3297778, at *4 (N.D. Ind. Aug. 1, 2017) ("While it is correct that the Seventh Circuit has questioned the accuracy of job statistics from vocational experts, the Seventh Circuit has not overruled its precedent holding that the ALJ is entitled to accept a vocational expert's testimony where no one questions the vocational expert's foundation or reasoning.") (quotations and citations omitted); *Chavez v. Berryhill*, 1:16-CV-314-WCL, 2017 WL 3124432, at *5 (N.D. Ind. July 24, 2017) ("Without any holding reversing *Donahue*, Courts have refused to remand solely for challenges to VE methodology, citing a lack of guidance from the Seventh Circuit."); *Adamec v. Berryhill*, 15 C 11811, 2017 WL 1196920, *6 (N.D. Ill. March 31, 2017) ("[T]he Seventh Circuit's repeated criticism of the use of the DOT in VE testimony, while pointed, was merely dicta and does not merit remand."); *Hoffman v. Colvin*, Case No. 15-C-940, 2016 WL 5107063, at *6 (E.D. Wis. Sept. 20, 2016) ("Here, [p]laintiff was represented by counsel at the hearing, and counsel declined to question the VE's data. That would have been the time to ask, and so the issue is rightly deemed waived."); *Weir v. Colvin*, No. 15-cv-532, 2016 WL 4083524, at *3 (W.D. Wis. Aug. 1, 2016) ("[Plaintiff's] argument [about VE methodology] is well taken. But [plaintiff's] criticism of the VE's methodology is not a basis for remand until appellate

15

precedent instructs that relying on the methodology is reversible error.").

The Court is not unsympathetic to the Plaintiff's argument. The Seventh Circuit has remarked on the problem with VE testimony, stating that "[t]he basic problem appears to be that the only reliable statistics concerning the number of jobs in the American economy and in regions thereof are census data of broad categories of jobs, rather than data on the number of jobs within the much narrower categories of jobs that the applicant for benefits could actually perform." *Forsythe v. Colvin*, 813 F.3d 677, 681 (7th Cir. 2016). VE's then make "unwarranted assumption[s]" when calculating the number of jobs available in the claimant's region. *Id.* But, as the court noted, "[t]he vocational experts and administrative law judges can't be blamed for the poverty of the data concerning jobs that applicants for social security disability benefits are capable of performing. It is high time that the Social Security Administration turned its attention to obtaining the needed data." *Id.* (noting the VE problem, but reversing because the ALJ failed to give reasons for thinking that the plaintiff could work for eight hours a day, forty hours a week, and failed to mention three medical reports).

Final decisions of the Social Security Administration must be upheld if they are supported by substantial evidence. 42 U.S.C. § 405(g). The decision must construct a logical bridge between the facts in the record and its ultimate conclusions. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The ALJ's decision to deny benefits for the period from January 15, 2008, to December 5, 2014, was based on substantial evidence.

## CONCLUSION

For the reasons stated above, the Court AFFIRMS the decision of the Commissioner. The Clerk of this Court is DIRECTED to ENTER JUDGMENT in favor of the Defendant and against the Plaintiff.

SO ORDERED on September 21, 2017.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT